USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/28/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SEHRA WAHEED,

         Plaintiff,

      -v-

NICKOLAOS RENTOULIS, ET AL.,

         Defendants.

**REPORT AND**
**RECOMMENDATION**

24-CV-6476 (AT) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Analisa Torres, United States District Judge:**

Plaintiff Sehra Waheed ("Plaintiff or "Waheed") brings this action in connection with the foreclosure sale of possessions she kept in two self-storage lockers. Before the Court is a motion to dismiss Plaintiff's Final Amended Complaint under Rule 12(b)(6) (the "Motion") filed by defendants Burnham Smartco, LLC ("Smartco"), Storage Treasures, LLC ("Storage Treasures"), OpenTech Alliance, Inc. ("OpenTech") and Robert A. Chiti ("Chiti") (collectively, the "Auction Defendants"). ECF No. 211. For the reasons described below, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff's factual allegations are uncomplicated and are stated in just eight paragraphs of her 33-page, 16-count Final Amended Complaint (the "FAC"). ECF No. 211 at 4–5.[1] Plaintiff rented two storage units from defendant SM 1 MMS,

---

[1] Page numbers cited in court filings refer to the ECF-generated pagination.

1

LLC, doing business as Manhattan Mini Storage, LLC (hereafter, "Manhattan Mini Storage"). *Id*. at 3–4. After Plaintiff's rental payments were delayed, Manhattan Mini Storage enforced its lien under Section 182 of the New York Lien Law and sold the objects in Plaintiff's storage units at auction to two individuals and/or their antiques businesses (hereafter, the "Purchasers"). *Id*. at 5. Plaintiff alleges that she saw the Purchasers remove her objects directly from Manhattan Mini Storage. *Id*. at 5. Plaintiff claims the sale of her possessions was wrongful and she sued to obtain the return of these items.

Notably absent from the Final Amended Complaint are any clear factual allegations regarding the conduct of the Auction Defendants. In describing these defendants, Plaintiff alleges that Storage Treasures owns "the premier online storage auction platform." *Id*. at 4. Reading the FAC generously in light of Plaintiff's *pro se* status and the undersigned's familiarity with the case, the undersigned infers that Manhattan Mini Storage sold Plaintiff's objects through an online auction platform operated by Storage Treasures.[2] While Plaintiff plainly complains that Manhattan Mini Storage's foreclosure on her personal property was in breach of her agreement with Manhattan Mini Storage and violated Section 182 of the New York Lien law, which governs self-storage facilities, she pleads no facts about the conduct of the auction itself.

---

[2] Although it is not properly considered in deciding this Rule 12 motion, which is directed to the face of the pleading, paragraph 21 of the Declaration of Robert A. Chiti filed in support of the Motion, ECF No. 244, confirms that this was the role of Storage Treasures.

The FAC contains even fewer allegations concerning the other Auction Defendants. OpenTech is the majority owner of Storage Treasures. FAC at 4. Chiti is the President and CEO of Storage Treasures. *Id.* Aside from conclusory allegations that OpenTech and Chiti direct and control the actions of Storage Treasures, the FAC contains no factual allegations about what, if anything, OpenTech and Chiti did in connection with the sale of Plaintiff's objects. Finally, Smartco is described as the "owner of StorageMart brand." *Id.* at 3. There is no explanation of how Smartco or the StorageMart brand are implicated in these matters.

## II.    PROCEDURAL BACKGROUND

This action was filed on August 23, 2024. ECF No. 1. This is not the first case that Plaintiff filed regarding these same core facts. Plaintiff initially sued some of the same defendants over the foreclosure sale of her possessions in New York state court (the "State Court Action"), but that case was dismissed on various grounds on August 19, 2024, just a few days before this case was filed. *See* ECF No. 273-2 (copy of complaint in State Court Action); ECF No. 55-1 (copy of decision dismissing State Court Action).

Plaintiff has amended her complaint before. *See* ECF Nos. 10, 111. At one point, this action included the Purchasers as defendants, but they were dismissed from the case on the grounds that Plaintiff was bound by a determination in the State Court Action that the Purchasers are not subject to personal jurisdiction in New York. ECF No. 168.

3

The most recent amendment, which Plaintiff describes as the "Final Amended Complaint," was filed on August 7, 2025. This amendment was made shortly before the close of fact discovery on August 29, 2025. *See* ECF Nos. 163 (scheduling order), 302 (order clarifying status of case). The FAC pleads sixteen causes of action, although many of these causes of action include multiple claims. For example, Plaintiff's Fourteenth Cause of Action includes claims under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

The Auction Defendants filed the instant Motion to dismiss the FAC on October 8, 2025 (ECF No. 243). The defendants affiliated with Manhattan Mini Storage (the "Storage Defendants") filed their own motion to dismiss and to compel arbitration, which shall be addressed separately.[3] *See* ECF No. 273.

Plaintiff made multiple filings in opposition to the Motion, including a Response (ECF No. 251), a Memorandum of Law (ECF No. 252) an Affidavit (ECF No. 253) and a Table of Authorities (ECF No. 254). The Auction Defendants filed a reply in further support of their Motion on November 13, 2025 (ECF No. 267).

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Standard

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Wang v. Cloopen Group Holding Limited*, 661 F. Supp. 3d 208, 222 (S.D.N.Y. 2023). However, "this requirement 'is inapplicable to legal

---

[3] The Storage Defendants are SM 1 MMS, LLC, Chris Burnam and Mike Burnam.

conclusions.'" *In re Turquoise Hill Resources Ltd. Securities Litig.*, 625 F. Supp. 3d 164, 194 (S.D.N.Y. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A complaint will not survive a motion to dismiss "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'," *In re Cannavest Corp. Securities Litigation*, 307 F. Supp. 3d 222, 235 (S.D.N.Y. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), without "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570).  In other words, "the plausibility requirement 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Turquoise Hill*, 625 F. Supp. 3d at 194 (quoting *Twombly*, 550 U.S. at 556).

### B.    Materials to Consider

When deciding a Rule 12 motion, a court may consider the facts alleged in the complaint, documents attached to, referenced in, or "integral" to the complaint, or matters of which judicial notice may be taken.  *See Wang v. Cloopen Group Holding Limited*, 661 F. Supp. 3d 208, 223 (S.D.N.Y. 2023); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A document is deemed integral to the complaint when the plaintiff either possessed or knew about it and the complaint "relies heavily upon its terms and effect." *See id.* (*quoting Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

Finally, submissions made by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9

(1980) (internal quotations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d

Cir. 2009) (courts are "obligated to construe a *pro se* complaint liberally").  As a

result, the court may consider factual allegations that appear in a pro se plaintiff's

motion papers as well as in his pleadings.  *See, e.g.*, *Freud v. N.Y.C. Dep't of Educ.*,

No. 21-CV-2281 (MKV), 2022 WL 889213, at *4 (S.D.N.Y. Mar. 25, 2022) (courts

"may also consider factual statements made in the *pro se* Plaintiff's opposition to

the motion to dismiss") (citing *Walker v. Schult,* 717 F.3d 119, 122 n.1 (2d Cir.

2013)).

## IV.    DISCUSSION

Plaintiff has asserted multiple, duplicative causes of action against numerous

defendants in what is arguably a simple breach of contract case.  As described

below, none of Plaintiff's sixteen causes of action plausibly states a claim against

the Auction Defendants and the Motion should be granted.  Each count is discussed

separately below.

### Count 1

There are three separate legal claims asserted in this count.  FAC at 6–8.

The FAC acknowledges that Plaintiff asserts no claim for breach of contract against

the Auction Defendants, nor could it because it alleges no contract with them.  *Id.* at

6.  Count One also includes claims for breach of Section 182 of the New York Lien

Law and Uniform Commercial Code ("UCC") Article 9.  *Id.*  As to these claims,

Plaintiff alleges that the auction was not conducted in a commercially reasonable

manner.  Putting aside whether the Auction Defendants owed any duty *to Plaintiff*,

as opposed to Manhattan Mini Storage, in conducting the auction,[4] the FAC fails to plead any facts whatsoever about how the Auction Defendants conducted the auction or why it was not commercially reasonable.  Instead, Plaintiff's allegations focus on alleged shortcomings by Manhattan Mini Storage, including failure to provide appropriate notices, failure to "wait the required statutory periods before the sale," and failure to apply sale proceeds properly.  FAC at 6.

In opposition, Plaintiff argues that the Auction Defendants "conducted a commercially unreasonable sham auction," ECF No. 251 at 16, and that they "provided the platform for a sham auction," and "profited from this unlawful scheme," ECF No. 252 at 7.  The problem with Plaintiff's arguments, as well as the FAC's allegations, is that any assertion that *the auction itself* was conducted improperly is entirely conclusory and unsupported by any factual allegations.  Plaintiff never describes what the Auction Defendants did wrong or what they should have done instead.  Nor does she explain the legal basis for the Auction Defendants owing any legal duty to her, as opposed to Manhattan Mini Storage, which presumably hired Storage Treasures to conduct the auction.  This is insufficient to state a claim against the Auction Defendants and Count 1 should be dismissed.

---

[4] Plaintiff argues in opposition that N.Y. Lien Law Section 182 and UCC Section 7-210 "create statutory duties for all parties involved in a lien sale—including the auctioneer—to act in good faith and in a commercially reasonable manner," citing *General Fabrics Co. v. Renco Finishing Corp.*, 191 Misc. 2d 148, 150 (App. Term 1st Dep't 2002). ECF No. 252 at 7.  That decision affirmed the dismissal of a claim against a warehouse for improperly selling the plaintiff's goods at auction, and does not address whether an independent auctioneer owes any legal duty to the original owner of the auctioned goods. Thus, it does not support the viability of claims against the Auction Defendants.

### Count 2

Count 2 includes claims for tortious interference and for fraudulent and negligent misrepresentation. FAC at 8–9. Starting with the claim for tortious interference, the FAC contains no factual allegations to support its assertion that the Auction Defendants "intentionally and improperly interfered with" Plaintiff's contract with Manhattan Mini Storage. *Id.* at 8. At best, the FAC alleges that such acts of interference "*could* include actions by the auctioneers in conducting an improper sale." *Id.* (emphasis added). In addition to being equivocal on its face, this conclusory assertion is inconsistent with Plaintiff's own factual theory about how her contract with Manhattan Mini Storage was breached.

A claim for tortious interference with contract requires (1) the existence of a valid contract with a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional and improper procuring of a breach, and (4) damages. *See White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Plaintiff claims that Manhattan Mini Storage breached its contract with her by foreclosing without following proper procedures. The gist of the FAC is that *Manhattan Mini Storage*, not the Auction Defendants, initiated the chain of events that led to the sale of Plaintiff's possessions. While Manhattan Mini Storage engaged Storage Treasures in the course of its alleged breach of contract, this is very different from the Storage Defendants intentionally "procuring" a breach by Manhattan Mini Storage. Thus, even though Plaintiff apparently states a claim for breach of contact against Manhattan Mini Storge, she fails to state a claim against the Auction

8

Defendants for tortious interference with that contract because there is no plausible allegation that the Auction Defendants did anything to procure the breach.

Because they sound in fraud, Plaintiff's claims for fraudulent and negligent misrepresentation must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotations omitted). The FAC fails to plead that the Auction Defendants made any statements at all to Plaintiff, much less does it plead the other elements of fraud and negligent misrepresentation. Accordingly, Count 2 should be dismissed.

### Count 3

Count 3 includes claims for conversion, bailment, and unjust enrichment. FAC at 10–11. The FAC acknowledges that the bailment claim is limited to Manhattan Mini Storage. *Id.* at 10. The claim for conversion asserts that the Auction Defendants "wrongfully exercised dominion and control over Plaintiff's personal property." *Id.* The problem for Plaintiff is that her factual allegations directly undermine any such assertion. Paragraph 5 of the factual allegations in the FAC states that the Purchasers directly removed Plaintiff's property from the facility operated by Manhattan Mini Storage. *Id.* at 5. Thus, the FAC effectively admits that the Auction Defendants had no physical possession of Plaintiff's

property.  Further, the FAC includes no plausible factual allegations that the Auction Defendants ever claimed title to her objects.

In opposition, Plaintiff argues that she demonstrates all defendants' "joint participation in the unlawful sale and conversion of Plaintiff's property," ECF No. 251 at 4, and that the Auction Defendants "are plausibly alleged to be direct participants in the conversion of Plaintiff's property," ECF No. 252 at 9.  But these labels and conclusions cannot substitute for supporting factual allegations. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Amer. v. Housing Auth. of the City of El Paso,* 87 N.Y.2d 36, 44 (1995) (internal quotation omitted).  The FAC fails to allege that the Auction Defendants exercised the right of ownership over Plaintiff's possessions.  The only facts that Plaintiff alleges about the Auction Defendants are that they conducted the online auction that allowed *Manhattan Mini Storage* to sell these items to the Purchasers. FAC at 31.  Without more, this is insufficient to state a claim for conversion.

Plaintiff also asserts a claim for unjust enrichment.  FAC at 10.  The basis for this claim is that the Auction Defendants, and others, "were unjustly enriched at the Plaintiff's expense by profiting from the unlawful auction and sale of her valuable property, retaining funds or property that rightfully belong to the Plaintiff." *Id.*  As described above, there is no factual allegation that Auction Defendants obtained, much less retained, Plaintiff's property.  The only plausible inference on this front is that the Auction Defendants received a commission for

10

conducting the auction.  This does not constitute unjust enrichment.  As the New York Court of Appeals has explained, "[t]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (internal quotations omitted).  Even where that is true in a broad sense,

> unjust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.

*Id.*  In *Corsello*, where the plaintiff alleged trespass and taking of property, the court concluded, "[t]o the extent that [plaintiffs' other] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects," and dismissed the unjust enrichment claim.  *Id.* at 791.

The same is true here.  The Auction Defendants presumably received a commission for conducting the auction under contract with Manhattan Mini Storage.  There is no allegation that the Auction Defendants failed to do what they were paid to do.  Even if there were such a claim, it would belong to Manhattan Mini Storage, not Plaintiff.  Thus, Count 3 should be dismissed.

### Counts 4 and 5

Not content to assert a simple claim for conversion of her property, Plaintiff adds two Counts asserting quasi-criminal claims.  Count 4 asserts claims for

11

Criminal Trespass, Wrongful Continued Looting, Pre & Post Deprivation. The Auction Defendants are not specifically named in Count 4, and Count 4 cannot reasonably be read to apply to them because it focuses on unauthorized access to and removal of objects from Plaintiff's storage units. There is no factual allegation that the Auction Defendants did this, and Count 4 should be dismissed.

Count 5 cites New York Penal Law Section 155.05, but is described as a "civil claim" for "common law larceny." FAC at 13–14. While this claim does name the "Auctioneers," it fails to state a claim against them. Although it asserts that "defendants unlawfully took, obtained, or withheld property from the Plaintiff with the intent to deprive her of it permanently," *Id*. at 14, this claim fails as to the Auction Defendants because there is no non-conclusory factual allegation that they ever obtained Plaintiff's property.

### Count 6

Count 6 asserts a claim for violation of the Servicemember Civil Relief Act (the "SCRA"), 18 U.S.C. § 3901, *et seq*. FAC at 15–16. Plaintiff's own statement of this claim defeats it: "This claim alleges that *if* the Plaintiff was a service member at the time of the events, the defendants violated [the SCRA]." *Id*. at 15 (emphasis added). But Plaintiff fails to allege that she *was* a service member at the relevant time, which is something she would know and must plead to state a claim. This failure is fatal to her SCRA claim, which should be dismissed.

12

### Count 7

Count 7 asserts a claim for Intentional Damage to Religious and Deceased Person's Items under 18 U.S.C. § 247. *Id.* at 16–17. Ignoring the question of whether this statute gives rise to a private right of action, this claim is asserted "against all named Defendants involved in property handling/destruction." *Id.* at 16. Because it admits that the Purchasers collected Plaintiff's property directly from Manhattan Mini Storage, *id.* at 5, the FAC cannot reasonably be read to assert this claim against the Auction Defendants.

### Count 8

Adding to the various conversion and theft claims addressed above, Count 8 asserts two intellectual property claims for Copyright Infringement and Trade Secret Theft, citing 17 U.S.C. §§ 504 and 505 and 18 U.S.C. § 1832. FAC at 17–19. These claims are asserted against "all named Defendants who accessed or distributed copyrighted material" and "against all named Defendants who accessed or misappropriated trade secrets," respectively. *Id.* at 18. There are some obvious problems with these claims, such as the failure to plead a copyright registration, and the absence of any factual allegations supporting a trade secret claim. Putting these problems aside, having admitted that the Purchasers retrieved Plaintiff's objects directly from Manhattan Mini Storage, the FAC does not plausibly allege that the Auction Defendants accessed, distributed or misappropriated any materials that were allegedly subject to copyright or trade secret protection. *Id.* at 5.

13

**Counts 9 and 10**

These Counts assert claims for Aggravated Identify Theft under 18 U.S.C. § 1028A (Count 9) and for Identity Theft and Unlawful Possession of ID under New York Penal Law §§ 190.77 and 190.84 and 18 U.S.C. § 1028 (Count 10).  FAC at 19–22.  At the outset, it is not clear that these criminal statutes give rise to a private right of action.  Ignoring this problem, the FAC makes clear that Count 9 is limited to "any Defendant who used Plaintiff's ID," *id*. at 19, and that Count 10 is limited to "any Defendant who possessed or used Plaintiff's ID," *id*. at 21.  There is no non-conclusory factual allegation that the Auction Defendants did any of these things, and Counts 9 and 10 should be dismissed.

**Count 11**

Count 11 asserts claims for violations of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), Theft of Medical Records and Aggravation of Medical Injuries.  This Count is asserted "against any Defendant who accessed/disclosed PHI," *i.e.*, protected health information.  FAC at 22–24.  The FAC explains that this claim "specifically asserts the unlawful taking of the Plaintiff's medical records from her storage unit." *Id*. at 23.  As referenced above, there is no non-conclusory factual allegation that the Auction Defendants took anything from Plaintiff's storage units.  To the contrary, the FAC expressly alleges that the Purchasers directly obtained these items from Manhattan Mini Storage.  *Id*. at 5.  Count 11 should be dismissed.

14

**Count 12**

Count 12 is for Deceptive Acts and Practices under New York General Business Law ("GBL") Sections 349 and 380 and Section 296-d of the New York Executive Law.  In support of her claim under GBL Section 349, Plaintiff asserts that defendants "engaged in deceptive acts or practices in the conduct of their business."  FAC at 24.  In particular, Plaintiff asserts there were "deceptive statements or omissions regarding the terms of the storage agreement, the lien enforcement process, or the conduct of the auction."  *Id.*  The only aspect of this claim that could potentially apply to the Auction Defendants is the assertion that they made deceptive statements or omissions concerning "the conduct of the auction."  *Id.*  But the FAC identifies no statement by the Auction Defendants at all about the conduct of the auction.  Having failed to identify any statement, the FAC does not properly plead any materially misleading statement by the Auction Defendants.

The FAC asserts that GBL Section 380 "*may* apply depending on specific facts related to credit or collection."  *Id.* (emphasis added).  But the FAC fails to state facts showing that the Auction Defendants were her creditors or that they engaged in any collection activity.

Finally, the FAC asserts that Section 296-d of the Executive Law "*could be* asserted *if* the defendants' actions were motivated by discriminatory animus."  *Id.* (emphasis added).  But the FAC pleads no facts to support a reasonable inference that the Auction Defendants acted with a discriminatory animus.  Indeed, it is far

15

more plausible that the Auction Defendants knew very little about Plaintiff, including whether she had any legally protected characteristics.

Accordingly, Count 12 fails to state a claim against the Auction Defendants.

**Count 13**

Count 13 asserts claims under the New York State Human Rights Law (the "NYSHRL"), the Americans with Disabilities Act (the "ADA") and the Fair Housing Act (the "FHA"). *Id.* at 25–27. But the FAC fails to explain how these statutes apply to the Auction Defendants or how they were violated. Starting with the NYSHRL, the FAC asserts that a claim "*could* arise *if* the Plaintiff was discriminated against based on a protected characteristic . . . in the provision of storage services or in the handling of her property." *Id.* at 26 (emphasis added). This claim is contingent and conclusory, and it states no facts supporting a reasonable inference that the Auction Defendants engaged in discrimination. Further, the FAC contains no plausible factual allegations that the Auction Defendants either provided storage services or handled Plaintiff's property.

As to Plaintiff's ADA claim, the FAC fails to describe Plaintiff's disability or what reasonable accommodation was required. Further, while the FAC claims that Manhattan Mini Storage is "a public accommodation," it makes no such assertion as to the Auction Defendants. *Id.* Thus, the FAC fails to state an ADA claim against the Auction Defendants.

Finally, Plaintiff's claim under the FHA is even more tenuous and should be dismissed. Acknowledging that the FHA, "primarily covers housing," the FAC

16

alleges that an FHA claim "*could be* considered" "*if* the storage unit was integral to a housing situation or the discrimination had housing implications." *Id.* (emphasis added). But there is no allegation, nor could there be, that the FHA applies to the Auction Defendants, who are in the business of conducting online auctions of personal property. Count 13 should be dismissed.

### Count 14

Count 14 asserts violations of various provisions of the United States Constitution, including the First, Fourth, Fifth and Fourteenth Amendments. *Id.* at 27–28. The FAC charges defendants with these constitutional violations "*if* any of the defendants were state actors or acted under color of state law." *Id.* at 27 (emphasis added). Critically, the FAC contains no non-conclusory factual allegations that the Auction Defendants were state actors or acted under color of state law. It is hard to imagine how such allegations could be made in good faith. Accordingly, Count 14 should be dismissed.

### Count 15

Count 15 asserts claims for violation of Section 7-210 of the New York UCC and Section 182 of the New York Lien Law. FAC at 28–30. Section 182 of the New York Lien Law is also asserted as part of Count 1, and Plaintiff fails to state a claim against the Auction Defendants under that statute for the same reasons described above in connection with Count 1.

Section 7-210 of the New York UCC is entitled, "Enforcement of Warehouse's Lien." This statute addresses the rights and obligations of a "warehouse" in

17

enforcing its lien, including the obligation to notify all "persons known to claim an interest in the goods." Section 7-102(13) defines a warehouse as "a person engaged in the business of storing goods for hire." There is no plausible allegation that the Auction Defendants fall within this statute.

Further, this claim focuses on "Defendants' enforcement of their purported lien and subsequent disposition of Plaintiff's property." FAC at 29. Most of Plaintiff's assertions in connection with this claim focus on alleged failings by Manhattan Mini Storage in the enforcement of its lien, such as failing to provide sufficient notice, failing to honor a statutory waiting period and failing to accept Plaintiff's tendered payment of storage fees in good faith. *Id.*

The only statements that arguably apply to the Auction Defendants are entirely conclusory and fail to state a claim. For example, the FAC asserts that the "method, manner, time, place and terms" of the sale were commercially unreasonable, but never describes those aspects of the sale or why they were unreasonable. *Id.* Similarly, the FAC asserts "the grossly inadequate advertisement of the sale," but provides no facts about such advertising or what made it inadequate. *Id.* Finally, the FAC claims that the sale price obtained at auction was but "a fraction of its actual value." *Id.* That is likely true for many foreclosure sales, but that fact alone, assuming it is true, does not support a reasonable inference that the Auction Defendants did anything actionable in conducting the auction. Even if it did, it is not clear from either the FAC or Plaintiff's opposition to the Motion why any shortcomings in the conduct of the

18

auction would constitute a breach of a legal duty owed to *Plaintiff*, as opposed to Manhattan Mini Storage.  Accordingly, Count 15 should be dismissed.

**Count 16**

Count 16 asserts claims for Piercing the Corporate Veil and Alter Ego Liability against three individuals, including Chiti.  *Id*. at 30–31.  The problem with these claims is that the allegations made in support of them are entirely conclusory, simply reciting the legal standards for shareholder liability without pleading any actual facts to support such a conclusion.  For example, the FAC asserts that Chiti, the CEO of Storage Treasures, "personally directed, implemented and oversaw the fraudulent and non-compliant online auction procedures that were essential to effectuating the theft of Plaintiff's property."  *Id*. at 31.  Simply put, disregarding the corporate form requires more.

In opposition, Plaintiff argues that her allegations are sufficient to show that "the owners exercised complete dominion of the corporation in respect to the transaction attacked" and that "such domination was used to commit fraud or wrong against the plaintiff which resulted in plaintiff's injury," citing *Island Seafood Co. v. Golub Corp.*, 303 A.D.2d 892, 893 (3d Dep't 2003).  ECF No. 252 at 8.  That decision affirmed the dismissal of a garnishment petition on the basis that it failed to demonstrate dominance over the corporation in question to perpetrate fraud.  *Island Seafood*, 303 A.D.2d at 895.  *Island Seafood's* explanation of the insufficiency of the allegations in that case is instructive and demonstrates why Plaintiff's allegations here fall short.

> While Tuccillo may be the sole stockholder, director and officer of both corporations and seems to exhibit disregard of corporate formalities, this, in and of itself, constitutes insufficient proof of complete domination and control which permit a corporate veil to be pierced. Significantly, the record is devoid of evidence of Tuccillo's personal use of corporate funds or that Anchor Distributors was undercapitalized. Furthermore, Tuccillo alleges that both corporations maintain separate bank accounts (although he testified that he cannot remember at which bank), addresses, and books and records. Devoid from the record is any evidence of the degree of intercorporate shuffling of assets and debts for the purpose of rendering uncollectible any money judgment against [Anchor Distributors].

*Id.* (quotations and citations omitted). Here, Plaintiff does not even make the factual allegations found insufficient in *Island Seafood* (*e.g.*, that Chiti is a sole shareholder, director and officer and disregarded corporate formalities), much less does she allege what was absent in that case (*e.g.*, personal use of corporate funds, undercapitalization, intercorporate shuffling of assets). While Plaintiff argues that her burden at the pleading stage is limited, citing *Olivieri Constr. Corp. v. WN Weaver St., LLC*, 144 A.D.3d 765, 767 (2d Dep't 2016), ECF No. 252 at 8, that decision described the type of allegations found sufficient in that case, which are entirely absent here:

> In this regard, the plaintiff alleged that Andrea was inadequately capitalized, that Weinberg commingled the assets of Andrea with the assets of Weaver, that Weinberg failed to adhere to corporate formalities with respect to Andrea, that Weinberg kept assets out of Andrea to avoid paying its debts and the judgment to the plaintiff, and that Weinberg used the account of Weaver to partially pay the debts of Andrea to the plaintiff.

20

*Olivieri*, 144 A.D.3d at 767.  *Olivieri* also observes that New York does not recognize a separate cause of action for piercing the corporate veil, such as that asserted in Count 16.  *See id.* at 766.

Even if Plaintiff had properly pleaded claims for disregarding the corporate form, that would simply give Plaintiff a basis to hold the other Auction Defendants liable for the actions of Storage Treasures.  As described above, Plaintiff fails to state a legally viable claim against Storage Treasures, which renders moot her claims for Piercing the Corporate Veil and Alter Ego Liability.  For the foregoing reasons, Count 16 should be dismissed.

### Leave to Amend

Ordinarily, a *pro se* plaintiff should have an opportunity to amend the complaint after a pleading is dismissed.  In this case, Plaintiff has already amended her complaint and her self-styled "Final Amended Complaint" was filed shortly before the close of fact discovery.  *See* ECF No. 163.  All discovery has ended and the case is ready for summary judgment and trial.  Indeed, after the Motion was fully briefed, Plaintiff has made multiple filings urging the Court to hold an expedited trial.  *See, e.g.,* ECF Nos. 351, 352, 353, 354, 355.  Allowing another amendment would unduly delay the case.  Further, amending the complaint to state claims against the Auction Defendants would be futile.  The reason Plaintiff fails to state a claim against the Auction Defendants is not a matter of pleading.  The problem, which cannot be solved by amendment, is that Plaintiff had no direct dealings with Auction Defendants and they never had ownership or possession of her property.

Thus, there was no legal relationship of any kind between Plaintiffs and the Auction Defendants.  Indeed, Plaintiff has not asked to amend her pleadings further.  Given the advanced stage of this litigation, Plaintiff presumably has presented in opposition to the Motion all that she has learned about the Auction Defendants through discovery.  In these circumstances, Plaintiff should not be given another opportunity to amend her complaint.

## V.    CONCLUSION

Plaintiff might have a legitimate grievance against Manhattan Mini Storage.  Although those claims face challenges, including a contractual limitation on damages, they are not frivolous and it is possible that Plaintiff will prevail.  *See* ECF No. 259 at 10.  But Plaintiff's attempt to hold the Auction Defendants liable in these circumstances is a bridge too far.  For the reasons described above, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED**.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen 14 days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  *See* Fed. R. Civ. P. 6(a), (b), (d).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, United States Courthouse, 500 Pearl Street, New York,

22

New York 10007-1312.  Any requests for an extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: May 28, 2026
      New York, New York

Henry J. Ricardo
United States Magistrate Judge

23